UNITED STATES, Appellee,

v.

Private (E-1) Ronald L. ROBERTSON,
SSN 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, United States
Army, Appellant.

CM 437289.

U. S. Army Court of Military Review.

27 Feb. 1979.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Larry C. Schafer, JAGC, and Captain Terrence L. Lewis, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Major Michael B. Kennett, JAGC, and Captain Charles A. Cosgrove, JAGC, were on the pleadings for appellee.

Before JONES, DeFORD and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

The appellant was convicted pursuant to his pleas by a general court-martial of absence without leave, assault, aggravated assault and obstruction of justice in violation of Articles 86, 128 and 134, Uniform Code of Military Justice, (UCMJ), 10 U.S.C. §§ 886, 928 and 934. His approved sentence includes a dishonorable discharge, confinement at hard labor for twenty-two months and forfeiture of all pay and allowances.

Appellant urges several assignments of error. We will address two of his assignments.

## I

Appellant first alleges that the court-martial that tried him was without jurisdiction. The thrust of appellant's position is that at the time the case was referred to a court with enlisted members the appellant had not made a request that the court be so constituted.

The record discloses that the initial charges against the appellant were referred on 20 April 1978 to Court-Martial Convening Order Number 52, dated that date. Additional charges were also referred to that same order, and on the same date the order was amended by Court-Martial Convening Order 54 which replaced the trial judge.

The original convening order created a court that included as court members eight officers and six enlisted members.

The record further discloses that the appellant did request that his court-martial include enlisted members. However, that request was dated 2 May 1978 and apparently was submitted some 12 days after the charges were referred to trial.

Article 25(c)(1), UCMJ, 10 U.S.C. § 825(c)(1), provides in part that "[a]ny enlisted member of an armed force on active duty who is not a member of the same unit as the accused is eligible to serve on general and special courts-martial for the trial of any enlisted member of an armed force who may lawfully be brought before such courts for trial . . ." This statute further provides that such enlisted members *shall serve* as court members only if before the conclusion of an Article 39(a), 10 U.S.C. § 839(a) session prior to trial or, in the absence of such session, before the court is assembled for the trial of the accused, the accused personally has requested in writing that enlisted members serve on it.

Appellate defense counsel direct our attention to the decision in *United States v. White,* 21 U.S.C.M.A. 583, 45 C.M.R. 357 (1972), which they urge is the controlling precedent in the case before us. In *White,* an enlisted member was tried and convicted by a court-martial composed of officer and enlisted members based upon his oral request for such a court-martial. The United States Court of Military Appeals reversed White's conviction. In so doing that Court reviewed the legislative history of Article 25.[1] Although not mandated by that history, the Court made the following comments which appellate defense counsel believe are controlling here:

Prior to 1948, only officers were statutorily eligible to serve as court members. By the amendment of Article of War 4, the Congress declared that Army enlisted men would thereafter be eligible to serve as court members and, over the strong objection of the War Department, gave to the accused enlisted man the right to demand their presence. With the enactment of the Code in 1950, this eligibility and the concurrent right was extended uniformly to enlisted men of all of the services.

Eligibility in general, however, is not the whole of the question. Article 25 clearly states that an enlisted man "*shall serve* as a member of a court *only* if . . . the accused personally has requested in writing that enlisted members serve on it." (Emphasis supplied.) The option is a right of the defendant and a convening authority is without power to designate enlisted members to sit, absent the *personal written re-*

1. The legislative history relied upon in *White* is illuminating. The various reports and analyses quoted uniformly contemplated that an accused's charges would be referred to trial before he made his election regarding enlisted members. This conclusion is compelled by the references to "charges brought against an enlisted man for trial by special or general court-martial." Charges are only definitively delineated "for trial by" one level court or another, if at all, at the time of referral by competent authority. Moreover, the legislative history does not suggest that the drafters intended to require an accused to make an election prior to the convening authority even considering the appropriateness of trial. The sequence that was contemplated was that referral would take place and then the accused elect. Needless-to-say, referral is to an existing court-martial and that court-martial may or may not conform to the accused's subsequently expressed desires regarding enlisted members serving. The drafters, consequently, must have contemplated a state of flux as to the members who would actually serve without affecting the validity of the referral.

*quest of the accused.* Not even the accused's counsel may act for him. Manifestly, Congress intended that the accused's personal written request be an indispensable prerequisite .to an enlisted man's membership on a particular court. No other interpretation of the clear statutory language is reasonable.

The appellee urges that the requirement of a personal written request was inserted as a measure to prevent the later complaint of a disgruntled accused who had elected to be tried by a panel with enlisted members. While we do not turn our decision on this aspect of legislative intent, we view the requirement as having been enacted to make very certain that no person other than an accused could cause the presence of enlisted members on a panel. In any event, the language used is so clearly indicative of the mandatory feature of the provision that the search for legislative intent is of diminished importance.

While recognizing the difference between the basic court-martial jurisdiction features of Article 16, Code, supra, 110 U.S.C. § 816, and the provisions of Article 25, Code, supra, which provide for service on court-martial panels, we do not interpret the provisions of Article 25 as mere procedure. An accused cannot be compelled to be tried by a military judge alone; likewise, an accused cannot be compelled to be tried by a panel with enlisted members. In each instance the choice is his. There is not enough conceptual difference between the two statutory requirements of written requests logically to justify a rule in the instant case appreciably different from the *Dean* rule.

This situation is not unlike that which was before the Supreme Court in *McClaughry v. Deming*, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902). Deming, a Captain in the Volunteer Army of the United States, was tried and convicted by a court-martial composed of officers in the Regular Army. The Supreme Court reversed, not because the officers of the Regular Army were not eligible to serve as members of a court-martial but because they were not eligible to serve on Deming's court-martial inasmuch

as the then existing statute required that one in Deming's position be tried by courts-martial "composed entirely of militia officers." (*Ibid*, 186 U.S. at page 57, 22 S.Ct. 786.) As the Court said:

. . . The attempt at the creation of a court failed because such attempt was a plain violation of the statute. A court-martial is wholly unlike the case of a permanent court created by constitution or by statute and presided over by one who had some color of authority although not in truth an officer *de jure,* and whose acts as a judge of such court may be valid where the public is concerned. The court exists even though the judge may be disqualified or not lawfully appointed or elected. But in this case the very power which appointed the members of and convened the court violated the statute in composing that court. It is one act, appointing the members of and convening the court, and in performing that act the officer plainly violated the law. Is such a court a valid court and the members thus detailed *de facto* officers of such valid court? Clearly not. [*Ibid.* 186 U.S. at page 64, 22 S.Ct. at 792.]

In the case at bar, *the attempt at the creation of a court failed because such attempt was a plain violation of the statute.* The enlisted membership of this court could have been validly appointed *only* if the accused had personally requested their presence in writing. Since he did not, the convening authority was without statutory authority to designate them as members. In such circumstances, the court was without jurisdiction to proceed. *McClaughry v. Deming,* supra. Cf. *United States v. Dean,* supra; *United States v. Harnish,* 12 USCMA 443, 31 CMR 29 (1961). See also *United States v. Robinson,* 13 USCMA 674, 33 CMR 206 (1963). (*White, supra,* at 362 and 363).

We agree with *White* that a court-martial is "without jurisdiction to proceed" with a trial in which enlisted members serve absent a written request from the accused for enlisted membership. The crucial factor, as *White* emphasizes in its quote

from Article 25(c)(1), UCMJ, is *serving* as a member. We do not believe, as appellant contends, that *White* requires a written request before an enlisted member can be appointed to a court-martial.

In both *United States v. Dean,* 20 U.S.C. M.A. 212, 43 C.M.R. 52 (1970), and *McClaughry v. Deming,* 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902), the two cases relied on in *White,* the deficiency was in proceeding with the trial of the accuseds in violation of a statute. There is nothing in *Dean* to the effect that the court-martial was jurisdictionally defective from the time of its creation because the subsequent request for trial by military judge alone was not in writing. The jurisdictional defect arose only when the military judge heard the case without members absent a written request for trial by judge alone.

Admittedly the language in *McClaughry v. Deming* lends some support to appellant's argument that the jurisdictional defect existed from the moment of appointment of enlisted members. We may not ignore the fact, however, that the court in that case was created solely for the purpose of trying one particular accused and that other language in the opinion says that "appointing the members of and convening the court . . ." was one act. Thus, the appointment of the *McClaughry* court cannot be severed from the subsequent service by the members so appointed. Had the regular Army officers who were appointed to the court for the trial of the volunteer (a status somewhat analogous to a reservist or a national guardsman) not actually served, there would have been no problem.

The one common factor in all of the cases relied upon by appellant is that the accuseds were tried and convicted by members (or by a military judge alone in *Dean*) who served contrary to the provisions of a statute. Here, the enlisted members served in accordance with the statute, *i. e.,* only

after the appellant submitted his personal request in writing. We hold this to be compliance with the statutory requirement of Article 25(c)(1), UCMJ.

## II

Appellant also alleges that he was denied due process and a fair trial because of the inattentiveness of a court member. The thrust of this assignment is the allegation that a member of the court was sleeping during the trial. Although this matter was not mentioned to counsel or the trial judge during the trial, the appellant and his guard at the trial now have submitted post-trial sworn affidavits. The appellant's affidavit states that Captain Jeffrey Andrews, President of his court-martial, was sleeping while the trial was in progress. The appellant's guard states that he was present during the trial from about 1330 hours until 1515 hours, 12 May 1978, and during that period he saw an officer who was on the "jury" who appeared to be asleep. He further stated that the officer "was resting his elbow on the table and his face in his hand and he had his eyes closed and appeared to be asleep for at least five to ten minutes."

Government appellate counsel have submitted affidavits from the trial counsel, three enlisted court members and three officer court members (six of seven total members) who all categorically deny that any member of the court was sleeping. Those affidavits include the statement of Captain Andrews. Trial defense counsel also denies any knowledge of any member of the court being asleep during the trial.

■ It is the obligation of court members to be attentive and dignified[2] during the trial. However, it is also the responsibility of the accused to bring the matter to the attention of his counsel in order that the presiding judge may be made aware of the situation.[3]

Here the record of trial is devoid of any mention of this alleged incident. We be-

---

2. Paragraph 73*a*, Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Groce,* 3 M.J. 369 (C.M.A.1977).

3. An appellant or his trial defense counsel may not sew a defect into the proceedings by failure to bring the inattentiveness of a court member

lieve that it is highly unlikely that a court member could be so inattentive as to rest his head on his hands, with his eyes closed for a period of five to ten minutes as described by appellant's guard without some officer or member of the court being cognizant of the incident. We further note that this alleged incident was not raised during the post-trial processing of this case and was only surfaced as a supplementary assignment of error on appeal.

Had the appellant told his trial defense counsel of this alleged incident upon its occurrence his notice would have constituted some evidence upon which the trial court and this Court could appraise the claimed denial of fair trial. The appellant's failure to give timely notice constituted waiver of the alleged error. This waiver does not involve a manifest miscarriage of justice or otherwise affect the fairness, integrity, or public reputation of the judicial proceedings. Accordingly, we find no merit to this assignment of error.

The remaining assignments of error have been considered and are deemed to be without merit.

The findings of guilty and the sentence are affirmed.

to the trial judge's attention. *United States v. Groce*, 3 M.J. 369, 371 (C.M.A.1977); *cf. Hester v. United States*, 489 F.2d 49 (8th Cir. 1973); *United States v. Curry*, 471 F.2d 419 (5th Cir. 1972), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973); *United States v. Carter*, 433 F.2d 874 (10th Cir. 1970).